Ilene Ehrlich v. Dr. William Miles, M.D. Individually

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-256-CV

ILENE EHRLICH APPELLANT

V.

DR. WILLIAM MILES, M.D. APPELLEE

INDIVIDUALLY

------------

FROM THE 153
RD
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant Ilene Ehrlich filed this medical malpractice suit against Appellee  Dr. William Miles for injuries that resulted from a face lift and cheek implants.  Appellee filed a motion to dismiss, alleging that Appellant’s expert report was not sufficient.  Appellant then filed a motion to extend time to file an expert report.  The trial court denied Appellant’s motion for extension and granted Appellee’s motion to dismiss.  In two points, Appellant now appeals.  Because we hold that Appellant’s expert was not qualified to testify to all of the statements made in his report, that the causation portion of his report does not specify that the individual acts that he is qualified to testify about independently caused the injury, and Appellant does not qualify for an extension to file an expert report, we affirm the trial court’s judgment.

Facts

Appellee performed plastic surgery on Appellant, giving her a face lift and cheek implants.  After the surgery, the implants became infected.  At first, Appellee treated Appellant’s infection with antibiotics.  When the antibiotics did not help, he removed the cheek implants.  Appellant then began to see another doctor for the treatment of the pain and numbness in her face.  Because Appellant was told that the surgery and the treatment of the infection had caused permanent nerve damage in her face, she filed this suit.

Within 180 days of filing suit, as required by the Texas Medical Liability and Insurance Improvement Act (“the Act”),
(footnote: 1) Ehrlich filed an expert report prepared by Dr. Charles Marable.  Appellee alleged that the report was not sufficient and filed a motion to dismiss, alleging, among other things, that Dr. Marable is not qualified as an expert and that his expert report was not a good faith effort to comply with the statute.  Appellant filed a response to the motion and requested in the alternative that the court grant a motion for extension of time to file a new report.
(footnote: 2)  The trial court denied the extension of time and granted the motion to dismiss.

In two points, Appellant argues that the trial court abused its discretion by (1) granting the motion to dismiss and ruling that Appellant’s expert report was not a good faith effort to comply with the statute’s requirement of an expert’s report and (2) denying Appellant’s motion for an extension of time under section 13.01(g) of article 4590i, because the failure to timely file an expert report that complied with the statute’s requirements was not intentional or the result of conscious indifference.

Standard of Review

Dismissal of a cause of action under article 4590i, section 13.01 is treated as a sanction and is reviewed for an abuse of discretion.
(footnote: 3)  An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding principles.
(footnote: 4)  A trial court does not abuse its discretion simply because it may decide a matter within its discretion differently than an appellate court.
(footnote: 5)  However, a trial court has no discretion in determining what the law is or in applying the law to the facts.
(footnote: 6)  Thus, “a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion.”
(footnote: 7)
Expert Report Requirement

The Act sets forth explicit requirements for plaintiffs asserting healthcare liability claims.
(footnote: 8)  The Act requires a plaintiff asserting a healthcare liability claim to submit an expert report, along with the expert’s curriculum vitae, for each physician or healthcare provider named as a defendant in the suit, no later than the 180th day after filing suit.
(footnote: 9)  If a plaintiff timely files an expert report and the defendant moves to dismiss a claim because of the report’s inadequacy, the trial court must grant the motion “only if it appears to the court, after a hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in subsection (r)(6) of this section.”
(footnote: 10)
 In her first point, Appellant contends that Dr. Marable’s report complies with the statutory requirements and represents a good faith effort to comply with the statutory definition of an expert report as required by sections 13.01(
l
) and 13.01(r)(6).  We disagree.

Qualified Expert

One basis upon which Appellee attacked the report was that it failed to show that Dr. Marable was qualified to be an expert witness in this case.

Section 13.01(r)(5) states that an “expert” means “with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 14.01(a) of this Act.”
(footnote: 11)  Section 14.01 of the Act sets out the following requirements for an expert witness:

[A] person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.
(footnote: 12)

In determining whether the expert is qualified on the basis of training and experience, the court is to consider whether, at the time the claim arose or the testimony is given, the witness is board certified or has other substantial training or experience in an area of practice relevant to the claim and is actively practicing medicine in rendering medical care services relevant to the claim.
(footnote: 13)  Because of the increasing specialization of medicine,

there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question. . . . [T]he proponent of the testimony has the burden to show that the expert ‘possesses special knowledge as to the very matter on which he proposes to give an opinion.’
(footnote: 14)

Thus, the test is whether “the offering party [has] establish[ed] that the expert has ‘knowledge, skill, experience, training, or education’ regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.”
(footnote: 15)  A medical expert who is not of the same school of medicine, however, is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant.
(footnote: 16)
 Appellant underwent surgical procedures involving a face lift and cheek implants performed by Appellee, a plastic surgeon.  According to Dr. Marable’s curriculum vitae, he is board certified in neurology and forensic medicine, not in plastic surgery or in surgery of any kind.  Neurology is the scientific study of the nervous system, especially in respect to its structure, functions, and abnormalities.
(footnote: 17)  A neurologist is a physician skilled in the diagnosis and treatment of disease of the nervous system.
(footnote: 18)  Because numbness and pain are nervous system reactions, one who specializes in neurology should be familiar with procedures, symptoms, and infections that affect the nerves.  Thus, Dr. Marable’s specialization might be relevant to Appellant’s claim.  He is qualified to testify regarding any treatment of the nerve-damaging infection, as well as the consultation with a patient regarding the benefits and risks of surgery.
(footnote: 19)
 Nothing in the expert report or Dr. Marable’s curriculum vitae indicates that he is familiar with either the surgical procedures used by Appellee for the face lift and implants or with the preoperative procedures used by Appellee to prepare Appellant’s face for the face lift and implants.  Dr. Marable does not state that he has knowledge of the accepted standards of medical care for the diagnosis, care, and treatment regarding plastic surgery.  Further, Dr. Marable does not show that he is qualified on the basis of his training or experience to offer an expert opinion regarding those accepted standards of medical care.  In short, Appellant did not establish that Dr. Marable was qualified to give an expert opinion regarding the surgical procedures performed on Appellant.
(footnote: 20)
Good Faith Effort To Comply

Because we hold that Dr. Marable was not qualified to opine regarding Appellee’s alleged negligence in the surgical procedures, we must determine if, after removing the improper statements, the remainder of the report represents a good faith effort to comply with the requirements of the Act.  Pursuant to sections 13.01(
l
) and 13.01(r)(6), an expert report must represent a good faith effort to provide a fair summary of the expert’s opinions.
(footnote: 21)  The expert report does not need to marshal all of the plaintiff’s proof, but it must include the expert’s opinion on each of the elements identified in the statute.
(footnote: 22)  The report cannot merely state the expert’s conclusions about these elements.
(footnote: 23)  “[R]ather, the expert must explain the basis of his statements to link his conclusions to the facts.”
(footnote: 24)
 In 
Palacios
, the Texas Supreme Court found that an expert report must accomplish two specific goals to meet section 13.01’s requirements.
(footnote: 25)  First, the report must inform the defendant of the specific conduct the plaintiff has called into question.
(footnote: 26)  Second, the report must provide a basis for the trial court to conclude the claims in question have merit.
(footnote: 27)  A report that fails to lay out the required elements, simply stating the expert’s conclusions as to the standard of care, breach, and causation, does not meet these purposes or constitute a good faith effort.
(footnote: 28)  In deciding whether the statutory standard is met, a trial court should stay within the four corners of the expert report itself, without considering referenced medical records or affidavits.
(footnote: 29)
 To comply with the expert report requirement, a plaintiff must only make a good faith attempt to provide a fair summary of the expert’s opinions.
(footnote: 30)  It is the substance of the opinions, not the technical words used, that constitutes compliance with the statute.
(footnote: 31)  The expert report may be informal, and the information presented need not meet the same requirements as evidence offered in a summary judgment proceeding or in a trial.
(footnote: 32)
 Under the recommendations/discussion section of Dr. Marable’s report he states:

In a malpractice suit there are four elements that need to be evaluated, duty, breach of duty, causation and damages.  In this case, we feel the failures of Dr. Bill Miles are the following:  Failure to warn patient of the risks and dangers of having the surgery, failure to realize the infection could not be treated by antibiotics, and failure to remove the implants when they became infected, failure to properly repair [sic] her face for laser treatment, failure to realize the implants had fallen.

What are the standards of care.  The standard of care would have been the following:  Not to do bilateral facial implants, but to give a small facial implant on the right-hand side.  The second standard of care was once the patient had infection, to tell the patient this needed to be taken out, and not to suggest antibiotics since antibiotics are known to not be effective in implant cases, and the only way to get rid of the infection is to discontinue or take out the implants.  Another standard of care would have been to properly prepare the face with [sic] laser surgery with proper creams prior to surgery.  Finally, the primary standard of care of course, is whenever a surgical procedure is contemplated, the surgeon should discuss all the risks and benefits of the surgery and let the patient decide if the risks of surgery and possibility of complications outweigh the benefits that could . . . be gained from surgery, and this was not done in this patient.

Therefore, I feel this case has merit because basically the doctor failed to warn her of all the risks and complications that could result from this.  He failed to warn her about the possibility of infection, and failed to warn her that once the implants [became infected] they needed to be removed instead of just treated with antibiotics.

Therefore, I feel his negligent activity that I listed above, is the proximate cause of this patient’s pain and suffering that she has undergone, as well as explantation of the implants and the current pain she is undergoing and will most likely have the rest of her life.

Reviewing only the statements this expert is qualified to make in this case, Dr. Marable’s report states his opinions concerning the standard of care, the breach, and causation in these particulars:

Standard of Care:

Once the patient had an infection, tell the patient that the only way to get rid of the infection is to remove the implant.  Whenever a surgical procedure is contemplated, the surgeon should discuss all the risks and possibility of complications of surgery and let the patient decide whether the benefits outweigh the risks.

Breach: 

Treating the patient with antibiotics for the infection rather than removing the implants.  Failing to consult the patient regarding the risks and benefits prior to surgery.

Causation:

His negligent activity that I listed above is the proximate cause of this patient’s pain and suffering.

We hold that the report does not meet the causation requirement of the Act.
(footnote: 33)  Although the report provides direct statements of the standards of care required, Appellee’s breaches of that standard of care, and the procedure that should have been followed, after removing the statements in the report that Dr. Marable is not qualified to make in this case, the report does not clearly  address the element of causation.  The report simply states the “negligent activity that I listed above is the proximate cause of this patient’s pain and suffering.”  The report fails to state whether each negligent activity listed above independently caused Appellant’s pain and suffering or if each negligent activity combined to cause her pain and suffering.
(footnote: 34)  Because we hold that Dr. Marable is not qualified to testify to some of the negligent activity alleged in the report, the phrase “negligent activity that I listed above,” without a specific indication that each alleged negligent activity was an independent cause, fails to link Dr. Marable’s qualified statements of alleged negligent activities to the specific injuries in this case.
(footnote: 35)
 Without a positive link between at least one of the independent qualified statements of alleged negligence and the injuries, Dr. Marable’s causation statement is merely conclusory and we are constrained to hold that it is not a good faith effort to comply with the Act.
(footnote: 36)  Consequently, because the Appellant’s expert report does not meet the requirements of § 13.01(r)(6), the trial court did not abuse its discretion by dismissing the case as provided in the Act.  We overrule Appellant’s first point.

Extension of Time to File Expert Report

Appellant also argues that the trial court abused its discretion by denying her motion for an extension of time to file her expert report under section 13.01(g) of the Act.  We disagree.

Section 13.01(g) states:

Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant’s attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection.  A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.
(footnote: 37)

The Texas Supreme Court has held that because a party who files suit on claims subject to the Act is charged with knowledge of the Act’s requirements, when a party files a report that omits one or more elements of section 13.01(r)(6), a purportedly mistaken belief that the report complied with the Act does not negate a finding of “intentional or conscious indifference” barring the party from a section 13.01(g) grace period.
(footnote: 38)  That is, the Texas Supreme Court has held that while some mistakes of law—of which it provides no examples— can negate a finding of intentional or conscious indifference and thus entitle the claimant to the grace period, a mistake of 
relevant
 law—such as the mistaken belief that an expert report meets the requirements of the Act—cannot.
(footnote: 39)  Unfortunately, the Texas Supreme Court has not provided us with an example of what this mistake of law might be, and, given the case law on the issue, we cannot fathom an example on our own.  Because we were forced to hold above that Appellant’s expert report omitted the causation requirement of the Act, and because the Texas Supreme Court has held that mistakes of law concerning the Act do not negate a finding of intentional or conscious indifference, we are constrained to hold that Appellant’s mistaken belief that the report complied with the Act does not negate a finding of “intentional or conscious indifference.”  Therefore, the trial court did not abuse its discretion by denying Appellant’s motion for a section 13.01(g) extension of time to file an expert report.  We overrule Appellant’s second point.

Conclusion

Having overruled Appellant’s two points, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  August 12, 2004

FOOTNOTES
1:
See
 Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 989 (former 
Tex. Rev. Civ. Stat. 
art. 4590i, § 10.01 (Vernon 2002), 
repealed by
 
Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at 
Tex. Civ. Prac. & Rem. Code Ann
. § 74 (Vernon 2004)).  This action was filed January 15, 2003, before the new Act’s September 1, 2003 effective date.  This opinion will refer to the former statute as article 4590i.

2:
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 989
 (former 
Tex. Rev. Civ. Stat. 
art. 4590i, § 13.01(g) (Vernon 2002), 
repealed by
 
Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at 
Tex. Civ. Prac. & Rem. Code Ann
. § 74.351 (Vernon 2004)).

3:
Am. Transitional Care Ctrs. v. Palacios
, 46 S.W.3d 873, 877 (Tex. 2001)
; Estate of Birdwell v. Texarkana Mem’l Hosp.
,
 Inc.
, 122 S.W.3d 473, 477 (Tex. App.—Texarkana 2003, pet. denied).

4:
See Garcia v. Martinez
, 988 S.W.2d 219, 222 (Tex. 1999).

5:
Downer v. Aquamarine Operators
,
 Inc.
, 701 S.W.2d 238, 242 (Tex. 1985); 
Birdwell
, 122 S.W.3d at 477.

6:
Walker v. Packer
, 827 S.W.2d 833, 840 (Tex. 1992).

7:
Id
.

8:
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01, 1995 Tex. Gen. Laws 985
 (
repealed
 2003)
.

9:
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(d), 1995 Tex. Gen. Laws 985 (repealed 2003).

10:
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(
l
), 1995 Tex. Gen. Laws 985 (repealed 2003).

11:
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01 (r)(5), 1995 Tex. Gen. Laws 985
 (repealed 2003).

12:
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 2, 1995 Tex. Gen. Laws 985, 988 (former 
Tex. Rev. Civ. Stat. 
art. 4590i, § 14.01(a) (Vernon 2002), 
repealed by
 
Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at 
Tex. Civ. Prac. & Rem. Code Ann
. § 74.401 (Vernon 2004)).

13:
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 2, sec. 14.01(c) 1995 Tex. Gen. Laws 985, 988
 
(repealed 2003).

14:
Broders v. Heise
, 924 S.W.2d 148, 152–53 (Tex. 1996) (quoting 2 
Ray, Texas Practice: Texas Law of Evidence:  Civil and Criminal 
§ 1401, at 32 (3d ed. 1980)).

15:
Roberts v. Williamson
, 111 S.W.3d 113, 121 (Tex. 2003) (quoting 
Broders
, 924 S.W.2d at 153).

16:
Marling v. Maillard
, 826 S.W.2d 735, 740 (Tex. App.—Houston [14th Dist.] 1992, no writ).

17:
Webster’s Third New International Dictionary
 1521 (1981).

18:
Id
.

19:
See Marling
, 826 S.W.2d at 740.

20:
See Broders
, 924 S.W.2d at 153.

21:
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985 (repealed 2003); 
De Leon v. Vela
, 70 S.W.3d 194, 198 (Tex. App.—San Antonio 2001, pet. denied).

22:
Palacios
, 46 S.W.3d at 878; 
Doades v. Syed
, 94 S.W.3d 664, 671 (Tex. App.—San Antonio 2002, no pet.).

23:
Palacios
, 46 S.W.3d at 878.

24:
Earle v. Ratliff
, 998 S.W.2d 882, 890 (Tex. 1999); 
see Windsor v. Maxwell
, 121 S.W.3d 42, 47 (Tex. App.—Fort Worth 2003, pet. denied).

25:
Palacios
, 46 S.W.3d at 879.

26:
Id
.; 
Windsor
, 121 S.W.3d at 47.

27:
Palacios
, 46 S.W.3d at 879; 
Windsor
, 121 S.W.3d at 47.

28:
Palacios
, 46 S.W.3d at 879; 
Windsor
, 121 S.W.3d at 47; 
Doades
, 94 S.W.3d at 671.

29:
Palacios
, 46 S.W.3d at 878; 
Windsor
, 121 S.W.3d at 47; 
De Leon
, 70 S.W.3d at 198.

30:
Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(
l
), 1995 Tex. Gen. Laws 985 (repealed 2003); 
Palacios
, 46 S.W.3d at 875; 
Birdwell
, 122 S.W.3d at 479.

31:
Moore v. Sutherland
, 107 S.W.3d 786, 790 (Tex. App.—Texarkana 2003, pet. denied); 
Birdwell
, 122 S.W.3d at 480.

32:
Palacios
, 46 S.W.3d at 879; 
Birdwell
, 122 S.W.3d at 480.

33:
See
 Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985 (repealed 2003).

34:
See Bowie Mem’l Hosp. v. Wright
, 79 S.W.3d 48, 52–53 (Tex. 2002).

35:
See
 
id
.

36:
See
 
id
. at 53.

37:
See
 Act of May 18, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(g), 1995 Tex. Gen. Laws 985 (repealed 2003).

38:
Walker v. Gutierrez
, 111 S.W.3d 56, 65 (Tex. 2003).

39:
Id.
; 
but see Verburgt v. Dorner
, 959 S.W.2d 615, 617 (Tex. 1997) (holding cost bond filed too late under former appellate rules, the relevant rules for timing of civil appellate filings and therefore the rules the appellant was charged with knowledge of, was filed in good faith and should necessarily be treated as a timely motion for extension of time, reversing the court of appeals’s dismissal of the case); 
Bank One, Texas, N.A. v. Moody
, 830 S.W.2d 81, 85 (Tex. 1992) (holding that failure to file answer as required by the Texas Rules of Civil Procedure, the relevant rules of procedure in civil cases and therefore the rules the appellant was charged with knowledge of, was a mistake of law that negated a finding of intentional or conscious indifference, reversing default judgment); 
Angelo v. Champion Rest. Equip. Co.
, 713 S.W.2d 96, 97 (Tex. 1986) (same).