NUMBER 13-08-00192-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


FRED L. PEREZ, M.D., Appellant,


v.
 


SANTOS SALINAS AND WIFE, ARGELIA SALINAS, Appellees.

 


On appeal from the 398th District Court 


of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Benavides 


Memorandum Opinion by Justice Rodriguez



 Appellees, Santos Salinas and his wife, Argelia Salinas, filed a health care liability
claim against John T. Hannigan, a certified registered nurse anesthetist (CRNA), who is
not a party to this appeal, and appellant, Fred L. Perez, M.D. In this accelerated appeal,
Dr. Perez contends that the trial court abused its discretion in denying his motion to dismiss
appellees' health care liability claim because their expert reports did not comply with
section 74.351 of the Texas Civil Practices and Remedies Code. See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351 (Vernon Supp. 2008). We affirm.

I. Background

 Appellees sued Dr. Perez alleging that he breached the standard of care for an
orthopedic surgeon by allowing a CRNA to perform an interscalene block while he
performed surgery on Mr. Salinas's shoulder, causing injury to Mr. Salinas. Specifically,
appellees argue that the applicable standard of care requires that this procedure be
performed by an anesthesiologist. Appellees timely served Dr. Perez with expert reports
prepared by James E. Butler, M.D. and Hector J. Herrera, M.D. Dr. Perez filed objections
to appellees' expert reports and a motion to dismiss appellees' lawsuit arguing that the
expert reports did not meet the statutory requirements of section 74.351(r)(6). See id. 
After a hearing, the trial court denied Dr. Perez's motion to dismiss.

II. Standard of Review and Applicable Law

 We review a trial court's ruling on a motion to dismiss a health care liability claim for
an abuse of discretion. Valley Baptist Med. Ctr. v. Azua, 198 S.W.3d 810, 815 (Tex.
App.-Corpus Christi 2006, no pet.). A trial court abuses its discretion when it acts "'without
reference to any guiding rules and principles' or, stated another way, whether its decision
was arbitrary or unreasonable." City of San Benito v. Rio Grande Valley Gas Co., 109
S.W.3d 750, 757 (Tex. 2003) (quoting Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 242 (Tex. 1985)).

 In order to comply with section 74.351(r)(6), an expert report must set out the
standard of care for each defendant, describe how each defendant breached that standard
of care, and explain how such breach caused the plaintiff's injury. See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351 (r)(6); Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 877 (Tex. 2001). Section 74.351(l) provides that, "[a] court shall grant a
motion challenging the adequacy of an expert report only if it appears to the court, after
hearing, that the report does not represent an objective good faith effort to comply with the
definition of an expert report in subsection (r)(6)." See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(l); Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).

III. Analysis

 By one issue, Dr. Perez contends that the trial court abused its discretion in denying
his motion to dismiss appellees' health care liability claim because the expert reports
provided by appellees were not a "good faith effort" to comply with the statutory
requirements of section 74.351. In four sub-issues, Dr. Perez specifically argues that Dr.
Herrera is not qualified to render an opinion and that Dr. Butler's report did not set out the
standard of care, identify any breaches of the standard of care, and did not establish a
causal link.

 In support of their healthcare liability claim, appellees provided the expert reports
of Dr. Herrera and Dr. Butler. Dr. Herrera provided his opinion regarding the applicable
standard of care in the administration of interscalene blocks for shoulder surgery. Dr.
Butler provided his opinion that (1) Dr. Perez deviated from the standard of care in allowing
a CRNA, rather than an anesthesiologist, to administer the interscalene block, (2) Dr.
Perez should have requested that a physician anesthesiologist administer the interscalene
block, (3) Dr. Perez should have foreseen the probability of Mr. Salinas's injury by allowing
a CRNA to administer the interscalene block, and (4) the deviation from the standard of
care, in reasonable medical probability, was a proximate cause of Mr. Salinas's injury. Dr.
Butler further states that Dr. Perez could have prevented Mr. Salinas's injury by not
allowing a CRNA to administer the interscalene block.

 In his first sub-issue, Dr. Perez contends that Dr. Herrera is is not qualified to render
an opinion. In his expert report, Dr. Herrera states that he is licensed to practice medicine
in Texas and is board certified in anesthesiology. He received his "M.D. degree from
UTBM at Galveston and did [his] anesthesiology residency at the University of Texas
Health Science Center at Houston." Dr. Herrera is a staff member of Methodist Hospital
and Texas Orthopedic Hospital in Houston, Texas. His medical practice includes general
anesthesia for general surgery and orthopedic surgery. In his practice of anesthesia for
orthopedic surgery, he "perform[s] upper and lower extremity blocks." Dr. Herrera has
been involved in over 1500 cases involving interscalene blocks for shoulder surgery, the
procedure performed by the CRNA on Mr. Salinas. We conclude that, although Dr.
Herrera is not a orthopedic surgeon, the record reflects that his experience and expertise
regarding interscalene blocks during orthopedic surgery qualify him as an expert to give
an opinion on that subject. See Tex. R. Evid. 702 (providing that the test is whether "the
offering party [has] established that the expert has 'knowledge, skill, experience, training,
or education' regarding the specific issue before the court which would qualify the expert
to give an opinion on that particular subject"); Ehrlich v. Miles, 144 S.W.3d 620, 624 (Tex.
App.-Fort Worth 2004, pet. denied) ("A medical expert who is not of the same school of
medicine, however, is competent to testify if he has practical knowledge of what is usually
and customarily done by a practitioner under circumstances similar to those confronting
the defendant."); see also Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a) (Vernon 2005)
(setting out that a person may qualify as an expert witness in a suit against a physician if
that person has "knowledge of accepted standards of medical care" involved in the claim
and "is qualified on the basis of training or experience to offer an expert opinion regarding
those accepted standards of medical care"); Roberts v. Williamson, 111 S.W.3d 113, 121
(Tex. 2003) (providing that the court "rejected the notion" that a physician giving his opinion
in the expert report has to practice within the same specialty area as the defendant if the
offering party has established that the physician has the qualifications to give his opinion
on that particular subject).

 Dr. Perez argues in his second sub-issue that Dr. Butler's report did not set forth the
standard of care. However, in his report, Dr. Herrera opined that the standard of care in
Texas for interscalene blocks for shoulder surgery "requires that it be done by an
anesthesiologist (medical doctor) and not by a CRNA." Because Dr. Herrera's report
established the standard of care in appellees' health care liability claim, Dr. Butler was not
required to establish the standard of care. See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(i) (providing that "a claimant may satisfy any requirement of this section for serving
an expert report by serving reports of separate experts" and that "[n]othing in this section
shall be construed to mean that a single expert must address all liability and causation
issues"); Packard v. Guerra, 252 S.W.3d 511, 531 (Tex. App.-Houston [14th Dist.] 2008,
pet. filed) ("[S]ection 74.351(i) permits a claimant to satisfy any requirement of section
74.351 for serving an expert report by serving reports of separate experts.").

 In his third sub-issue, Dr. Perez contends that the experts' reports did not identify
any breaches of the standard of care. Specifically, Dr. Perez argues that Dr. Butler's report
relies on the "captain of the ship" doctrine which has been disapproved by the supreme
court, see Sparger v. Worley Hosp., Inc., 547 S.W.2d 582, 585 (Tex. 1977), and that Dr.
Butler's report is contradictory.

 Dr. Perez is correct that Dr. Butler referred to the "captain of the ship" doctrine in his
report. However, Dr. Butler did not rely on this doctrine for his opinion that Dr. Perez
breached the standard of care. In fact, Dr. Butler clearly states in his report that Dr. Perez
deviated from the standard of care by allowing the CRNA to administer the interscalene
block. In his report, Dr. Butler states:

 The records fail to show that an M.D. anesthesiologist was present, or took
part in the anesthesia at all.


 . . .


 In this case, Dr. Perez, the orthopedic surgeon, allowed a CRNA rather than
an anesthesiologist to administer the interscalene block which, in my opinion,
was a deviation of the standard of care.


 . . . 

 

 [Dr. Perez] should have foreseen that the probability of an injury of the
brachial plexus by allowing a CRNA to administer the interscalene block on
Mr. Salinas.


 This deviation, in reasonable medical probability, was a proximate cause of
Mr. Salinas' brachial plexus injury. Dr. Perez could have prevented the
outcome sustained by Mr. Salinas by simply not allowing an interscalene
block be performed by a CRNA.

 Dr. Perez argues that Dr. Butler contradicts himself because he opines that an
interscalene block should "never" be administered during shoulder surgery. However, in
his report, Dr. Butler does not state that the interscalene block should not have been
administered but that, by improperly allowing a CRNA to administer the interscalene block,
Dr. Perez violated the standard of care, which was the proximate cause of Mr. Salinas's
injury. 

 In his fourth sub-issue, Dr. Perez contends that appellees' expert reports did not
establish a causal link between Dr. Perez's alleged breach of the standard of care and Mr.
Salinas's injury. Specifically, Dr. Perez argues that "Dr. Herrera does not explain how
having a different person perform the interscalene block would have prevented all of the
alleged injuries." We disagree. In his report, Dr. Butler explains that Dr. Perez's deviation
from the standard of care, in reasonable medical probability, was a proximate cause of Mr.
Salinas' brachial plexus injury and that Dr. Perez could have prevented the injury by not
allowing a CRNA to perform the interscalene block on Mr. Salinas. Dr. Herrera explained
Dr. Perez should have foreseen that allowing a CRNA to administer the interscalene block
would cause injury to Mr. Salinas; Dr. Perez's deviation from the standard of care in
reasonable medical probability was a proximate cause of Mr. Salinas' brachial plexus
injury; and Dr. Perez could have prevented the injury by not allowing a CRNA to perform
the interscalene block.

 Therefore, we conclude that because appellees' expert reports represented an
objective good faith effort to comply with 74.351(r)(6), the trial court did not abuse its
discretion by denying Dr. Perez's motion to dismiss. See Azua, 198 S.W.3d at 815. We
overrule Dr. Perez's sole issue. (1)

IV. Conclusion

 We affirm the trial court's judgment.

 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and

filed this 25th day of November, 2008.


1. In a final sub-issue, Dr. Perez contends that upon a plaintiff's failure to comply with section
74.351(a), the trial court must award attorney's fees to the defendant. Because we have concluded that
appellees complied with section 74.351(a), and that the trial court did not abuse its discretion by denying Dr.
Perez's motion to dismiss, we do not reach this sub-issue. See Tex. R. App. P. 47.1 (providing that we must
address "every issue raised and dispositive and necessary to final disposition of the appeal").