

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00175-CV

**BARBARA BATY,**

**Appellant**

**v.**

**OLGA L. FUTRELL, CRNA, AND COMPLETE ANESTHESIA CARE, PC,**

**Appellee**

**From the 40th District Court**
**Ellis County, Texas**
**Trial Court No. 85552**

## MEMORANDUM OPINION

Barbara Baty appeals from final orders that dismissed her health care liability claims with prejudice. In her sole issue, Baty complains that the trial court erred by determining that her amended expert report was deficient. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2014). Because we find no reversible error, we affirm the orders of the trial court.

## I.      *Factual and Procedural Background*

On March 23, 2011, Baty underwent a surgical procedure at the Surgery Center of Waxahachie to remove a cataract from her left eye.  Olga Futrell, a certified registered nurse anesthetist (CRNA), administered retrobulbar anesthesia during the procedure, which is generally described as anesthesia behind the eyeball.   During the administration of the anesthesia, Futrell allegedly inserted a needle into Baty's left optic nerve, which eventually resulted in permanent blindness in her left eye.

Baty sued Futrell for negligence and Complete Anesthesia Care, P.C., Futrell's employer, alleging that it was vicariously liable for Futrell's negligent acts.  Baty served and attached an expert report authored by Dr. Steven Chalfin with her original petition.  Futrell and CAC filed timely objections to Chalfin's report, and motions to dismiss Baty's claims, contending that Chalfin's report was inadequate and failed to satisfy the statutory requirements for a healthcare liability expert report.  Because the parties agreed that Chalfin's first report was deficient, one thirty-day extension of time was granted to allow Baty to cure the deficiencies.

Baty thereafter submitted Chalfin's amended expert report to Futrell and CAC.  Futrell and CAC filed timely objections alleging that the amended expert report was deficient as to all essential elements of a health care liability claim (standard of care, breach of the standard of care, and causation); Futrell and CAC also filed amended motions to dismiss and requested a hearing.  At the conclusion of the hearing, the trial

court sustained Futrell and CAC's objections to the amended expert report as being deficient, and granted their amended motions to dismiss. Pursuant to the trial court's orders, all claims asserted by Baty were dismissed with prejudice. This appeal followed.

## II. *Health Care Liability Claim Expert Reports*

A plaintiff asserting a health care liability claim must serve each defendant with an expert report that includes "a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damage claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). A challenge to the sufficiency of an expert report must be sustained if the trial court concludes, after a hearing, that "the report does not represent an objective good faith effort to comply with the [statutory requirements]." *Id.* § 74.351(*l*). An expert report constitutes an objective "good faith effort" if it provides adequate information to "inform the defendant of the specific conduct the plaintiff has called into question, . . . provide[s] a basis for the trial court to conclude that the claims have merit," *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam), and "does not contain a material deficiency," *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

We review a trial court's ruling on the sufficiency of an expert's report for an abuse of discretion. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011); *Am.*

*Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). Under that standard, we defer to the trial court's factual determinations if they are supported by the evidence, but review its legal determinations *de novo*. *See Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011). A trial court abuses its discretion if it rules arbitrarily or unreasonably, and without reference to guiding rules or principles. *Samlowski*, 332 S.W.3d at 410. Nevertheless, when reviewing matters committed to the trial court's discretion, we may not substitute our opinion for the trial court's judgment. *Id.*

To be sufficient, an expert report may not merely state the expert's conclusions as to the standard of care, breach of the standard of care, and causation. *See Palacios*, 46 S.W.3d at 879. Rather, the expert must explain the basis for his statements and link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002). In a healthcare liability context, to avoid a dismissal of the asserted claims the plaintiff's expert report must constitute an objective "good faith effort" to comply with the requirements of section 74.351(r)(6). *See Leland v. Brandal,* 257 S.W.3d 204, 206-07 (Tex. 2008); *Palacios*, 46 S.W.3d at 879. As such, an expert report that is inadequate with reference to any of the three required elements, or which states the expert's opinions in conclusory form, will not satisfy the objective good faith standard. *See Samlowski,* 332 S.W.3d at 410; *Palacios*, 46 S.W.3d at 879.

Although the expert report need not marshal all of the plaintiff's proof, it nonetheless must include the expert's opinion on each of the elements identified in the

statute.  *See Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010); *Ehrlich v. Miles*, 144 S.W.3d 620, 626 (Tex. App.—Fort Worth 2004, pet. denied).  It is the substance of the opinions, not the technical words used, that constitutes compliance with the statute.  *See Ehrlich*, 144 S.W.3d at 626-27.  However, statements concerning the standard of care and breach of the standard of care must be articulated in an expert report with sufficient specificity so that inferences need not be indulged to discern them.  *Benish v. Grottie*, 281 S.W.3d 184, 198 (Tex. App.—Fort Worth 2009, pet. denied) (*citing Palacios*, 46 S.W.3d at 880).  As this Court has held, no court may infer or speculate as to what an expert intends to opine.  *See Salais v. Tex. Dep't of Aging & Disability Servs.*, 323 S.W.3d 527, 536 (Tex. App.—Waco 2010, pet. denied).

## III. *Standard of Care*

The expert report must first set forth and articulate the applicable standard of care.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).  Identifying the standard of care is critical because whether a defendant breached his or her duty to a patient cannot be ascertained without specific information as to what the defendant should have done differently.  *Palacios*, 46 S.W.3d at 880.

The amended expert report authored by Chalfin, and relied on by Baty, states the standard of care to be as follows:

> In evaluating and providing medical care for a patient such as Mrs. Baty, the standard of care for an ordinarily prudent practitioner such as a MD or CRNA requires:

1. Adequate preoperative assessment of the patient;
2. Adequate communication with the patient and/or the patient's family;
3. Performance of only procedures for which adequate training and level of competence has been achieved;
4. Performance of such procedures at the level of competence and skill required to minimize risk to the patient;
5. In the case of retrobulbar anesthetic blocks, administering the block in the proper manner to preclude injuring the delicate structures of the orbit, including the globe and optic nerve.

Additionally, in Chalfin's summary of the medical care that was provided to Baty, he states:

Of note, the initial block attempt produced inadequate akinesia and anesthesia, so a second retrobulbar block attempt was performed (Refs. 6, 11). This is significant because complications such as globe penetration and optic nerve injury are more common when blocks require augmentation (additional needle sticks). This is due to the fact that the initial injection volume can distort the anatomy of the orbital structures, and lead to injury by the needle on the subsequent attempt. For this reason, many Opthalmic surgeons augment an inadequate block by using a blunt cannula inserted via a conjunctival incision, rather than a needle.

Baty argues the language above provides an adequate description of the applicable standard of care because all that was required to satisfy the standard of care element was for the amended report to state that (1) it was erroneous for Futrell to place the needle into Baty's optic nerve, and (2) Futrell should not have done so. Baty contends that no additional explanation of what constitutes the applicable standard of care is necessary. We disagree.

"While a 'fair summary' is something less than a full statement of the applicable standard of care . . . even a fair summary must set out what care was expected, but not given." *Palacios*, 46 S.W.3d at 880. Further, the standard of care is defined by what an ordinarily prudent healthcare provider would have done under the same or similar circumstances. *Id*. Here, despite Baty's efforts to cure the report's deficiencies, Chalfin's amended expert report is conclusory, inadequate, and does not satisfy the *Palacios* objective "good faith" standard.

Because the statements outlined in the amended expert report are conclusory, numerous matters are unexplained. For example, what constitutes: (1) an adequate preoperative assessment of the patient; (2) adequate communication with the patient concerning the procedure to be performed; (3) an adequate level of training, skill, and competence to perform this procedure? At a minimum, the amended expert report should specify and articulate what procedures and testing are necessary to perform the retrobulbar block, and the level of skill and competence that is required for a CRNA, such as Futrell, to successfully do so. Further, what is the "proper manner" to administer the retrobulbar block? What should be done by a CRNA under the circumstances to avoid injury to a patient? The amended expert report is silent on these queries, and one is left to infer what Futrell should have done differently.

Clearly, the amended report does not specify what actions, procedures, or treatment was either required or *should have been* performed or provided by Futrell

while administering the retrobulbar block to Baty. In fact, the amended report does not (1) identify or articulate the applicable standard of care for a CRNA when performing a retrobulbar block procedure, (2) describe what actions or courses of action are encompassed within the requisite standard of care for performing said procedure, or (3) even explain, as it should, how an ordinarily prudent CRNA *should* perform this procedure under the same or similar circumstances.[1] The amended report does not properly analyze Futrell's specific conduct in treating Baty in accordance with the applicable standard of care, or how Futrell's compliance with the requisite standard of care would have avoided injury to her. Moreover, there is no explanation recited in the amended report as to what actions or procedures a reasonably prudent healthcare professional, such as Futrell, should take to avoid inserting a needle into a patient's optic nerve in the event a first injection for a retrobulbar block was insufficient. As such, the failure to explain or articulate in Chalfin's amended report what specific actions and precautions were required and *should have* been taken by Futrell to properly treat Baty in this instance is fatal to her recovery.

It is conclusory to state that Futrell should not have placed the needle into the optic nerve of Baty's left eye, as Chalfin has opined. Common sense dictates that a healthcare provider should not insert a needle into a patient's optic nerve.

---

[1] Typically, standards of care are not formulated to state what actions or procedures should be specifically avoided. Rather, standards of care are adopted to articulate and specify the affirmative actions or procedures that a reasonably prudent healthcare professional should take and comply with to achieve the desired result.

Baty v. Futrell                                                                 Page 8

Nevertheless, common sense and the standards of care which must be adhered to by healthcare professionals are not synonymous. Further, the additional statements made by Chalfin in his summary of Baty's medical care (which only attempts to articulate the standard of care for a surgeon, rather than for a CRNA) are insufficient and cannot provide a basis for determining what the proper standard of care *should be* for an ordinarily prudent healthcare professional that is treating a patient under the same or similar circumstances. In light of these inadequate statements, one must again infer as to what the healthcare professional should do. Because it is improper to speculate or make inferences in this context, we cannot say that Chalfin's description in his amended report of a procedure that is used by "many" surgeons is sufficient to establish that this alternative procedure is part of the recognized standard of care for a CRNA such as Futrell.

The trial court's determination to sustain the objections to the amended expert report and to grant the motions to dismiss was not outside of the zone of reasonable disagreement. Because the amended expert report is silent as to Futrell's duties and what an ordinarily prudent CRNA *should have* done in this instance, the trial court could have reasonably concluded that Baty's claims were meritless. Although Baty's circumstances are most unfortunate, we conclude that the trial court did not abuse its discretion in dismissing Baty's claims with prejudice. Therefore, Baty's sole issue is overruled.

#### IV. *Conclusion*

To survive a dismissal of asserted healthcare liability claims, a plaintiff's expert report must adequately address each of the three required statutory elements. The failure to satisfy even one of the statutory elements will bar recovery. Here, Baty's amended expert report is inadequate, conclusory, and fails to satisfy the standard of care requirement as to Futrell. Because of these deficiencies, the amended expert report cannot resurrect the vicarious liability claims that Baty has asserted against CAC. *See Gardner v. U.S. Imaging, Inc.,* 274 S.W.3d 669, 671-72 (Tex. 2008). In light of this Court's holding, we need not address the adequacy, or lack thereof, of the breach of the standard of care and causation elements of Baty's healthcare liability claims.

Having found no reversible error, we affirm the orders of the trial court.

W. STACY TROTTER
Judge



Before Chief Justice Gray,
    Justice Davis, and
    Judge Trotter[2]
    (Justice Davis, dissenting)
Affirmed
Opinion delivered and filed November 19, 2015
[CV06]

---

[2] The Honorable W. Stacy Trotter, Judge of the 358th District Court of Ector County, sitting by assignment of the Chief Justice of the Supreme Court of Texas pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2013).