# NO. 12-18-00325-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BEVERLY NUGENT, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CHESTER L. NUGENT, APPELLANT* | *§* | *APPEAL FROM THE* |
| *V.* | | |
| *HIGHLAND PINES, G.P., INC., HIGHLAND PINES NURSING HOME, LTD., HIGHLAND PINES, SNF, LTD, AND HIGHLAND PINES NURSING AND REHABILITATION A/K/A HIGHLAND PINES CONVALESCENT CENTER, APPELLEES* | *§* | *COUNTY COURT AT LAW NO. 2* |
| | *§* | *GREGG COUNTY, TEXAS* |

## MEMORANDUM OPINION

Beverly Nugent, Individually and as Representative of the Estate of Chester L. Nugent appeals the trial court's order granting a motion to dismiss filed by Highland Pines Nursing Home, Ltd. and Highland Pines, SNF, Ltd. (collectively "Highland Pines"). We reverse and remand.

## BACKGROUND

Chester L. Nugent suffered a fractured hip on August 24, 2015. He was admitted to Good Shepherd Medical Center on August 25 and underwent surgery. On August 28, Chester was transferred to Highland Pines. Shortly before his discharge from Good Shepherd, a bed sore was detected on his sacrum. The bed sore was documented upon Chester's admission to Highland Pines. It was noted that Chester had a "decubitus ulcer unstable" and that it was "dark red/purple, non blanchable redness." While at Highland Pines, Chester's bed sore worsened. He was transferred to Longview Regional Medical Center on September 19. His infection had become

septic, and he was in septic shock. While at Longview Regional, Chester was diagnosed with necrotizing fasciitis. He was later transferred to Select Specialty Hospital and then to another nursing home. Chester died on October 27 from sepsis, sacral decubitus, and malnutrition.

Beverly brought healthcare liability claims against several of Chester's medical providers, including Highland Pines. She alleges that Highland Pines failed to adequately care for Chester's bed sore, which ultimately led to his death. In an attempt to comply with Section 74.351 of the Texas Civil Practice and Remedies Code, Beverly served Highland Pines with an expert report and curriculum vitae of Dr. Jeffrey Stone. Highland Pines filed objections to Dr. Stone's report, including an objection that Dr. Stone was unqualified as an expert, and a motion to dismiss Beverly's claim. The trial court allowed Dr. Stone to supplement his report in accordance with Section 74.351(c) to cure deficiencies regarding his qualifications.

After Dr. Stone timely supplemented his report, Highland Pines renewed its objections and again moved for dismissal. Following a hearing, the trial court sustained the objections and granted the motion. Specifically, the trial court found that Dr. Stone's expert report does not demonstrate that he is actively treating patients in facilities "substantially similar" to Highland Pines. As a result, the trial court found that Dr. Stone is not actively rendering health care services relevant to the claims alleged. Beverly filed a motion for new trial and motion for reconsideration, both of which were denied. This interlocutory appeal followed.[1]

## EXPERT REPORT

In her sole issue, Beverly contends the trial court abused its discretion when it granted Highland Pines's motion to dismiss. Specifically, she argues the trial court erred in finding that Dr. Stone is not "actively practicing health care in rendering health care services relevant to" the claims at issue.

### Standard of Review

A trial court's ruling on qualifications of a medical expert and the sufficiency of an expert's report under Chapter 74 is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if it acts without

---

[1] An interlocutory appeal of an order granting a motion to dismiss under Section 74.351 is permitted. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(10) (West Supp. 2018).

reference to guiding rules or principles. ***Van Ness***, 461 S.W.3d at 142. However, in exercising its discretion, it is incumbent upon the trial court to review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrated a good faith effort to show that the plaintiff's claims have merit. *See **id.*** at 144. When reviewing factual matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court. ***Gray v. CHCA Bayshore L.P.***, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

**Expert Report Requirements**

The Texas Medical Liability Act requires a claimant to serve an expert report early in the proceedings on each party against whom a health care liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017). The Texas Supreme Court has explained that "eliciting an expert's opinions early in the litigation [is] an obvious place to start in attempting to reduce frivolous lawsuits." ***Palacios***, 46 S.W.3d at 877. The purpose of evaluating expert reports is to deter frivolous claims, not to dispose of claims regardless of their merits. *See **Certified EMS, Inc. v. Potts***, 392 S.W.3d 625, 631 (Tex. 2013). A valid expert report must fairly summarize the applicable standard of care; explain how a physician or health care provider failed to meet that standard; and establish a causal relationship between the failure and the harm alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2017); ***Potts***, 392 S.W.3d at 630.

**Qualifications**

A physician is qualified to submit an expert report on the causal relationship between a departure from the standard of care and an injury when he would otherwise be qualified to address causation under the Texas Rules of Evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C). A person may qualify as an "expert" on the question of whether the health care provider departed from the accepted standard of care if the person (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider; (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. *Id.* § 74.402(b) (West 2017). To be qualified on the basis of training or experience, the person must be certified or have other substantial training or experience in an area of health care practice relevant to the claim and must be actively practicing health care

3

in rendering health care services relevant to the claim. *Id.* § 74.402(c). "Practicing health care" includes serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider. *Id.* § 74.402(a).

Not every licensed medical doctor is automatically qualified to testify as an expert on every medical question, and the proponent of that testimony must show that the expert possesses special knowledge regarding the matter on which he proposes to give an opinion. *Ehrlich v. Miles,* 144 S.W.3d 620, 624–26 (Tex. App.—Fort Worth 2004, pet. denied). Accordingly, the offered report must demonstrate that the expert has "'knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.'" *Id.* (quoting *Roberts v. Williamson,* 111 S.W.3d 113, 121 (Tex. 2003)). The expert report must do more than merely allege that the expert is a medical doctor in order to render opinions about the standard of care and causation, and the reviewing court cannot fill in gaps in a report by drawing inferences. *See, e.g., Collini v. Pustejovsky,* 280 S.W.3d 456, 465–67 (Tex. App.—Fort Worth 2009, no pet.) (trial court erred in denying physician's motion to dismiss because expert report did not demonstrate expert qualified to testify regarding causation).

**Analysis**

Beverly urges that Dr. Stone's report is not deficient because it adequately shows that he is actively practicing healthcare relevant to the claims alleged both at the time the claim arose and at the time he wrote his reports. She further argues that the health care services relevant to her claim concern wound care by the Highland Pines nurses and staff and not nursing home protocols, policies, or procedures.

Dr. Stone's curriculum vitae reflects that he is a medical doctor, board certified in wound management, and a fellow of the American College of Certified Wound Specialists. Dr. Stone is currently the president of Wound Care Consultants. He elaborates in his reports:

> I have specialized in this area for over 23 years, having treated hundreds of patients with chronic non-healing wounds, many residing in hospitals, LTAC's, skilled facilities and group homes. A large percentage of my patient population have decubitus ulcers . . . I have been certified as a wound specialist for over 23 years by the American Academy of Wound Management. I am familiar with the standards of care for the treatment and diagnosis of non-healing wounds, decubitus ulcers and infections. I have written orders for the care and treatment of these patients and have supervised the execution of these orders by RN's, LVN's and CAN's who were assigned to provide the hands-on care to my patients. I am therefore intimately familiar with the standards of care as it applies in this case.
>
> . . .

4

I have extensive experience of providing wound care in the nursing home/acute and long-term rehabilitation facilities that are competitors of and substantially similar to Highland Pines.

. . .

In early 1992 after opening my practice here in Dallas, I went to the internet and looked for nursing homes that had been cited for skin problems. I started going to those nursing facilities and taking care of their patients with wounds. I also gave lectures to the nursing staff on prevention of wounds and interventions that they would do to improve patient outcomes.

. . .

In judging my expertise regarding the standard of care for a facility such as Highland Pines, it is important to remember that Mr. Nugent was admitted to Highland Pines for inpatient rehabilitation care after having hip surgery. He was not a traditional "nursing home" resident at Highland Pines. Mr. Nugent was a rehabilitation patient. . . . I am intimately familiar with healthcare facilities that deliver this type of care. This is the medical setting in which I expressed my opinions regarding the standard of care and the breach of that standard by the staff at Highland Pines regarding their care and treatment of Mr. Nugent. I have extensive experience serving as a wound care physician in this setting as well as the long-term nursing home setting.

Dr. Stone's report also lists six "nursing homes/acute care rehabilitation facilities" at which he served as medical director for wound care. Furthermore, over the last twenty-five years, Dr. Stone estimates that he has seen nursing home patients in "15-20 nursing homes" and listed ten of those facilities by name. In addition, Dr. Stone stated:

The total number of patients I have seen in nursing home/rehabilitation facilities substantially similar to Highland Pines with wounds is over 2000. While Mr. Nugent was not a nursing home resident at Highland Pines, the skin care considerations for a non-ambulatory nursing home resident are essentially the same for a rehabilitation patient such as Mr. Nugent. The prevention of skin breakdowns in both settings utilizes the same principals and the same standard of care applies. The treatment of skin breakdowns is the same and the same standard of care is applicable in both the rehabilitation setting and the nursing home setting.

Highland Pines asserts, and the trial court found, that Dr. Stone must have specialized knowledge of the protocols, policies, or procedures of a nursing home in order to identify an applicable standard of care. The trial court also found that Dr. Stone must be actively practicing in a nursing home setting to be qualified under Section 74.402. The trial court stated that Dr. Stone's report did not "pinpoint the time period that Dr. Stone was associated with, or otherwise seeing patients in the separate facilities that Dr. Stone characterizes as 'substantially similar' to" Highland Pines. Because Dr. Stone's report refers to all of these events and associations in the

past tense, the trial court found that Dr. Stone is not "actively practicing health care in rendering health care services relevant to" Beverly's claims. We disagree.

Beverly's claims against Highland Pines do not allege that Highland Pines's protocols, policies, or procedures were deficient or were the cause of any breach of the standard of care by Highland Pines or its medical staff. Beverly's petition alleges that Highland Pines, through its nurses, doctors, and other medical staff, failed to adequately treat and care for Chester's bed sore. According to Beverly, the alleged substandard care of Chester's bed sore ultimately led to his death. At no point does Beverly complain about Highland Pines's administration, protocols, policies, or procedures. In addition, the pertinent standard of care identified in Dr. Stone's report is that Highland Pines's treating physicians, nurses, and staff should have taken adequate pressure relief measures. Dr. Stone's report goes into detail as to what those measures are and whether they were taken by Highland Pines. In regard to the nature of Beverly's claims and the pertinent standard of care, we see nothing that requires Dr. Stone to possess expertise on the "protocols, policies or procedures" of a nursing home. *See Harris Cty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 178 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (physician qualified to opine on whether hospital breached standard of care in failing to timely inform patient of cancer diagnosis).

Furthermore, the statute does not require Dr. Stone to be currently treating patients in a nursing home facility. As noted above, the pertinent standard of care concerns whether Chester's wounds were appropriately treated. Dr. Stone is board-certified in wound care. He has treated many patients with bed sores and is familiar with the standard of care. He currently serves as President of Wound Care Consultants. He also serves as a clinical assistant professor at University of Texas Southwestern Medical School. As a result, Dr. Stone is actively practicing healthcare in a field of practice that involves the same type of care or treatment as that delivered by Highland Pines. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(1); *Grindstaff v. Michie*, 242 S.W.3d 536, 541 (Tex. App.—El Paso 2007, no pet.) (orthopedic surgeon qualified to opine on whether podiatrist breached standard of care even though proffered expert was not a podiatrist).

We conclude that Dr. Stone is qualified to serve as an expert on the issue of whether Highland Pines departed from the accepted standards of care in regard to Beverly's claims. Dr. Stone established his expertise in the field of wound care and satisfied the statutory requirements by showing that he (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by Highland Pines; (2) has knowledge of accepted standards of

6

care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of his training or experience to offer an expert opinion regarding those accepted standards of health care.  *See* TEX. CIV. PRAC. & REM. CODE ANN. 74.402(b).  Accordingly, we hold that the trial court erred in granting Highland Pines's motion to dismiss Beverly's health care liability claims.  We sustain Beverly's sole issue.

## DISPOSITION

Having sustained Beverly's sole issue, we *reverse* the judgment of the trial court and *remand* for further proceedings consistent with this opinion.


<u>**GREG NEELEY**</u>
Justice

Opinion delivered April 24, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

APRIL 24, 2019

NO. 12-18-00325-CV

**BEVERLY NUGENT, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CHESTER L. NUGENT,**
Appellant
V.
**HIGHLAND PINES, G.P., INC., HIGHLAND PINES NURSING HOME, LTD., HIGHLAND PINES, SNF, LTD. AND HIGHLAND PINES NURSING AND REHABILITATION A/K/A HIGHLAND PINES CONVALESCENT CENTER,**
Appellees

Appeal from the County Court at Law No. 2
of Gregg County, Texas (Tr.Ct.No. 2017-1644-CCL2)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** and that all costs of this appeal are hereby adjudged against the Appellees, **HIGHLAND PINES, G.P., INC., HIGHLAND PINES NURSING HOME, LTD., HIGHLAND PINES, SNF, LTD. AND HIGHLAND PINES NURSING AND REHABILITATION A/K/A HIGHLAND PINES CONVALESCENT CENTER,** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*