COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT WORTH

 

 

                                        NO.
2-08-079-CV

 

 

MALCOLM BARBER AND                                                    APPELLANTS

LEANN BARBER

                                                   V.

 

LEO C. MERCER, JR., M.D.                                                      APPELLEE

 

                                              ------------

 

             FROM THE 78TH
DISTRICT COURT OF WICHITA
 COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Appellants Malcolm and Leann Barber sued Leo C.
Mercer, Jr., M.D., appellee, and others for negligence in the treatment and
care of Malcolm=s heart condition during a heart
bypass procedure.  Dr. Mercer was the
general surgeon who assisted the lead surgeon by harvesting a saphenous vein
from Malcolm=s leg.  This case currently involves only Dr.
Mercer.  The Barbers challenge the trial
court=s
dismissal of their claim against Dr. Mercer for failure to comply with the
expert report requirements of the civil practice and remedies code.  We reverse and remand.

                             Factual
and Procedural Background

The Barbers sued numerous defendants, including
Dr. Mercer, for negligence in connection with the diagnosis and surgical
treatment of Malcolm=s heart condition (an
interlocutory appeal between the Barbers and several of the other defendants is
currently pending in this court under cause number 2-07-353-CV).  Malcolm underwent a multi-vessel coronary artery
bypass graft (CABG) procedure at United Regional Health Care System in Wichita Falls, Texas,
in early 2004.  The surgery lasted over
six hours, and afterwards, Malcolm suffered numbness, pain, and weakness in his
left upper arm that led to a diagnosis of left ulnar nerve lesion and ulnar
cubital syndrome.  He required additional
surgery and therapy and ultimately sued the physicians, nurse practitioners,
and the hospital involved in his care for damages resulting from the padding
and positioning of his arm.  Dr. Mercer,
a general surgeon, had assisted Mikko P. Tauriainen, M.D., a cardiovascular and
thoracic surgeon, in performing the CABG procedure on Malcolm; Dr. Mercer was
responsible for harvesting the left saphenous vein from Malcolm=s leg.








In the Barbers=
original petition they alleged multiple basis of negligence including
specifically that the various defendants negligently failed to timely,
properly, safely, or adequately supervise or care for Malcom=s
condition during the CABG procedure and postoperatively, particularly relating
to his Aleft
upper extremity difficulties.@  Furthermore, the Barbers alleged that several
of the defendant doctors failed to adequately train or supervise others who
were assisting in Malcom=s procedure.

After they filed suit, the Barbers timely filed
their expert reports.  Dr. Mercer
objected to the Barbers= first expert report dated
August 5, 2006 on the grounds that their expert, Jeffrey Alan Wagner, M.D.,
M.B.A., a board certified anesthesiologist, was not qualified to provide the
report and that Dr. Wagner failed to provide a fair summary of his opinions in
accordance with section 74.351(r)(6) of the civil practice and remedies
code.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6)
(Vernon Supp. 2009).  After a hearing on
the issue in July 2007, the trial court specifically overruled Dr. Mercer=s
objections to Dr. Wagner=s qualifications to opine, but
it sustained his objections as to the report=s
failure to provide a fair summary of the applicable standard of care, breach of
that standard as to each defendant, and causation under section 74.351.

On September 25, 2007, the trial court entered an
order giving the Barbers thirty days to correct the defects in their first
expert report as to Dr. Mercer.[1]  The order stated, A[O]bjections
to the Expert Report of Jeffery Alan Wagner, M.D. are hereby OVERRULED to the
extent that such Objections challenge Dr. Wagner=s
qualifications to opine as an expert, pursuant to Sections 74.401 and 74.402 .
. . .@  However, the trial court denied the Barbers= oral
request to supplement with a new expert as to defendants Mercer, Robert
Lee Moss, M.D., United Regional Health Care System, Inc., and Shellie Barnett-Wright,
PA-C.  The Barbers immediately filed a
more extensive report by Dr. Wagner, particularly expanded as to standard of
care, breach, and causation as to each named defendant since the trial court
had denied Dr. Mercer=s objections to Dr. Wagner=s qualifications.

After the Barbers filed their amended report
through their same expert, Dr. Wagner, Dr. Mercer filed a second motion to
dismiss, which the trial court granted on the sole ground that the expert was
not qualified Ato opine as an expert against
Dr. Mercer.@[2]  In all other respects, the trial court
determined that the expert=s
amended report, dated September 28, 2007, Asatisfies
the requirements of section 74.351 . . . as to Dr. Mercer, and all other
objections by Dr. Mercer are overruled.@  The trial court then granted Dr. Mercer=s motion
to dismiss him with prejudice.  The
Barbers appealed.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 51.014(a)(10) (Vernon 2008).

                                         Issue
on Appeal

In the Barbers= sole
issue on appeal, they contend that the trial court abused its discretion in
granting Dr. Mercer=s second motion to dismiss on
the basis that Dr. Wagner was not a qualifying Aexpert@
sufficient to give an opinion on whether Dr. Mercer departed from accepted
medical care under the civil practice and remedies code.  Dr. Wagner=s
complete amended report is attached to this opinion as appendix AA.@

                                       Standard
of Review

Although the Barbers ask us to reevaluate the
standard of review for expert report challenges, Texas courts and our supreme court, in
particular, agree that review of a trial court=s
decision on a motion to dismiss under section 74.351 is subject to an abuse of
discretion standard.  See, e.g., Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex.
2001) (applying abuse of discretion standard to predecessor statute); Craig
v. Dearbonne, 259 S.W.3d 308, 310 (Tex. App.CBeaumont
2008, no pet.); San Jacinto Methodist Hosp. v. Bennett, 256 S.W.3d 806,
811 (Tex. App.CHouston [14th Dist.] 2008, no
pet.); Lal v. Harris Methodist Fort Worth, 230 S.W.3d 468, 471 (Tex.
App.CFort
Worth 2007, no pet.).  We have previously
declined the opportunity to apply a de novo standard of review to this issue
and therefore decline the Barbers=
invitation now.  Ctr. for Neurological
Disorders, P.A. v. George, 261 S.W.3d 285, 291 (Tex. App.CFort
Worth 2008, pet. denied).  Furthermore, a
trial court=s decision on whether a
physician is qualified to offer an expert opinion in a health care liability
claim is reviewed under an abuse of discretion standard.  See Mem=l
Hermann Healthcare Sys. v. Burrell, 230 S.W.3d 755, 757 (Tex. App.CHouston
[14th Dist.] 2007, no pet.).

To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241B 42 (Tex. 1985), cert. denied, 476 U.S. 1159
(1986).  Merely because a trial court may
decide a matter within its discretion in a different manner than an appellate
court would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Id. at 242.  A trial court does not abuse its discretion
if it commits a mere error in judgment.  See
E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995).

                                          Applicable
Law

In a health care liability claim, a claimant must
serve on each defendant an expert report that addresses standard of care,
liability, and causation no later than the 120th day after the claim is
filed.  Tex. Civ. Prac. & Rem. Code Ann. '
74.351(a), (j).  If an expert report has
not been served on a defendant within the 120‑day period, then on the
motion of the affected defendant, the trial court must dismiss the claim with
prejudice and award the defendant reasonable attorney=s fees
and costs.  Id. ' 74.351(b).  A report Ahas not
been served@ under the statute when it has
been physically served but it is found deficient by the trial court.  Lewis v. Funderburk, 253 S.W.3d 204,
207B08 (Tex. 2008).  When no report has been served because the
report that was served was found to be deficient, the trial court has
discretion to grant one thirty-day extension to allow the claimant the
opportunity to cure the deficiency.  Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(c).








A report is deficient (therefore subjecting a
claim to dismissal) when it Adoes not
represent an objective good faith effort to comply with the definition of an
expert report@ in the statute.  Id.
' 74.351(l).  While the expert report Aneed not
marshal all the plaintiff=s proof,@ Palacios,
46 S.W.3d at 878, it must provide a fair summary of the expert=s opinions
as to the Aapplicable standards of care,
the manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.@  Tex.
Civ. Prac. & Rem. Code Ann. '
74.351(r)(6).

To qualify as a good faith effort, the report
must Adiscuss
the standard of care, breach, and causation with sufficient specificity to
inform the defendant of the conduct the plaintiff has called into question and
to provide a basis for the trial court to conclude that the claims have merit.@  Palacios, 46 S.W.3d at 875.  A report does not fulfill this requirement if
it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Id.
at 879.  The information in the report Adoes not
have to meet the same requirements as the evidence offered in a summary‑judgment
proceeding or at trial.@ 
Id.  When reviewing the adequacy of a report, the
only information relevant to the inquiry is the information contained within
the four corners of the document alone.  Id. at 878; see
Bowie Mem=l Hosp.
v. Wright, 79 S.W.3d 48, 52 (Tex.
2002).  This requirement precludes a
court from filling gaps in a report by drawing inferences or guessing as to
what the expert likely meant or intended. 
See Austin Heart, P.A. v. Webb, 228 S.W.3d 276, 279 (Tex. App.CAustin
2007, no pet.) (citing Bowie
Mem=l Hosp., 79
S.W.3d at 53).

An expert report concerning standards of care for
physicians Aauthored by a person who is not
qualified to testify . . . cannot constitute an adequate report.@  Moore v. Gatica, 269 S.W.3d 134, 140
(Tex. App.CFort Worth 2008, pet. denied); In
re Windisch, 138 S.W.3d 507, 511 (Tex. App.CAmarillo
2004, orig. proceeding); see Ehrlich v. Miles, 144 S.W.3d 620, 624B25 (Tex.
App.CFort
Worth 2004, pet. denied).  To be an Aexpert@ on the
departure from a physician=s
standard of care (therefore qualifying the submission of an expert report), a
person must be a physician who

(1) is practicing
medicine at the time such testimony is given or was practicing medicine at the
time the claim arose;

 

(2) has knowledge of
accepted standards of medical care for the diagnosis, care, or treatment of the
illness, injury, or condition involved in the claim; and

 

(3) is qualified on the
basis of training or experience to offer an expert opinion regarding those
accepted standards of medical care.

 

Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(r)(5)(A),
'
74.401(a) (Vernon 2005).  In determining
the third element of this standard, courts must consider whether the physician
who completed the report (1) is board certified or has other substantial
training or experience in an area of medical practice relevant to the claim,
and (2) is actively practicing medicine in rendering medical care services
relevant to the claim.  Id. '
74.401(c).  In other words,

there is no validity, if
there ever was, to the notion that every licensed medical doctor should be automatically
qualified to testify as an expert on every medical question. . . .  [T]he proponent of the testimony has the
burden to show that the expert possesses special knowledge as to the very
matter on which he proposes to give an opinion.

 

Ehrlich, 144 S.W.3d at 625 (quoting Broders v. Heise,
924 S.W.2d 148, 152B53 (Tex. 1996)).  For this reason, the offered report (along
with the physician=s curriculum vitae (CV)) must
generally demonstrate that the expert has Aknowledge,
skill, experience, training, or education regarding the specific issue before
the court which would qualify the expert to give an opinion on that particular
subject.@  Id. at 625 (quoting Roberts v.
Williamson, 111 S.W.3d 113, 121 (Tex. 2003)).

However, Athere
are certain standards of medical care that apply to multiple schools of
practice and any medical doctor.@  See Blan v. Ali, 7 S.W.3d 741, 746
(Tex. App.CHouston [14th Dist.] 1999, no
pet.).  Therefore, a physician Awho is
not of the same school of medicine [as the defendant] . . . is
competent to testify if he has practical knowledge of what is usually and
customarily done by a practitioner under circumstances similar to those
confronting the defendant.@  Ehrlich, 144 S.W.3d at 625; see
also Marling v. Maillard, 826 S.W.2d 735, 740 (Tex. App.CHouston
[14th  Dist.] 1992, no writ).

                                               Analysis

Whether Law of the Case Applies

After the next hearing on the adequacy of Dr.
Wagner=s
amended report, this time the trial court determined that Dr. Wagner, a board
certified anesthesiologist, was not qualified to give an opinion
on Dr. Mercer=s care but that all of Dr.
Mercer=s other objections to Dr. Wagner=s report
were overruled and that in all other respects the report had
met the requirements of a section 74.351 expert report.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351.  Because the only basis for the trial court=s
dismissal of the Barbers= claim against Dr. Mercer was
based on its new determination that Dr. Wagner Afails to
meet the qualifications to opine as an expert against Dr. Mercer,@ we too
will focus on this ground.

Importantly, the trial court=s
initial order regarding Dr. Wagner=s first
report as to Dr. Mercer specifically overruled the defense objections to Dr.
Wagner=s
qualifications to opine regarding Dr. Mercer=s alleged
negligence.  Therefore, we must first
decide the impact, if any, of the trial court=s prior
ruling that actually approved Dr. Wagner=s
qualifications and found his report lacking only on standard of care, breach,
and causation.

Generally, once an issue has been litigated, that
issue may not be relitigated.  See
generally Nat=l Union Fire Ins. Co. of
Pittsburgh, Pa. v. John Zink Co., 972 S.W.2d 839, 845B46 (Tex.
App.CCorpus
Christi 1998, pet. denied).  And, in this
particular case, Dr. Mercer filed an interlocutory appeal to this court
challenging the trial court=s denial
of his objections to Dr. Wagner=s
qualifications and its alleged denial of his motion to dismiss based upon Dr.
Wagner=s
qualifications.  This court dismissed
that appeal in a memorandum opinion for lack of jurisdiction to consider an
interlocutory appeal of a trial court=s
failure to rule on a dismissal motion based on the inadequacy of an expert
report and its grant of an extension of time to cure.  See Barber v. Barber, No.
02-07-00353-CV, 2007 WL 4461411, at *1 (Tex. App.CFort
Worth Dec. 20, 2007, no pet.) (mem. op.). 
In doing so, we noted that the trial court had not ruled on Dr. Mercer=s first
motion to dismiss.  Id.  Dr. Mercer had tried to appeal Aonly the
denial of his objections and motion to dismiss based on [Dr. Wagner=s] lack
of qualifications to opine against Dr. Mercer.@  Id.

At the hearing on the sufficiency of the amended
report, the Barbers argued that Dr. Mercer had waived his current right to
challenge the expert report because this, in essence, gave him two attempts to
appeal.  The unique posture of this case,
however, is that our court dismissed the first interlocutory appeal for want of
jurisdiction.  Thus, there really has
been no review of the trial court=s
initial overruling of Dr. Mercer=s
objection to Dr. Wagner=s qualifications while at the
same time sustaining Dr. Mercer=s
objections to the report for failure to adequately set forth the standards of
care, breach, and causation.  In other
words, the Barbers modified their first report to address the defects
specifically enumerated by the trial courtCthose
that went to the adequacy of the report regarding standard of care, breach, and
causationCas opposed to the qualifications
of their expert.  They made virtually no
changes to the initial report regarding Dr. Wagner=s
qualifications because the trial court had already overruled Dr. Mercer=s
objections to Dr. Wagner=s qualifications.  However, the law of the case doctrine is
limited to questions of law determined by a court of last resort.  See generally City of Houston v. Jackson,
192 S.W.3d 764, 769 (Tex. 2006); Briscoe v. Goodmark Corp., 102 S.W.3d
714, 716 (Tex. 2003); Truck Ins. Exch. v. Robertson, 89 S.W.3d 261, 264
(Tex. App.CFort Worth 2002, no pet.). Thus,
we will consider Dr. Wagner=s
qualifications to opine in this appeal.[3]

Qualifications to Opine

A[A] physician >who is
not of the same school of medicine [as the defendant] is competent to testify
if he has practical knowledge of what is usually and customarily done by a
practitioner under circumstances similar to those confronting the defendant.=@  Gatica, 269 S.W.3d at 141 (citing Ehrlich,
144 S.W.3d at 625).  In other words, such
a physician may not be practicing in the Aexact
same field as the defendant physician, but instead must . . . be actively
practicing medicine in rendering medical care services relevant to the claim.@  Kelly v. Rendon, 255 S.W.3d 665, 674
(Tex. App.CHouston [14th Dist.] 2008, no
pet.).  According to the Texas Rules of
Evidence, which also provide guidance, we may look to Awhether
the offering party has established that the expert has knowledge, skill,
experience, training, or education regarding the specific issue before the
court.@  Gelman v. Cuellar, 268 S.W.3d 123, 128
(Tex. App.CCorpus Christi 2008, pet.
denied) (citing Tex. R. Evid. 702; Roberts, 111 S.W.3d at 121).  Furthermore, the court must ensure that the
experts have expertise concerning the actual subject about which they offer
opinions.  Reed v. Granbury Hosp.
Corp., 117 S.W.3d 404, 410 (Tex. App.CFort
Worth 2003, no pet.).








Dr. Mercer=s
specific objections to Dr. Wagner=s
qualifications as set forth in his amended report and CV are based upon the
allegation that Dr. Wagner is unqualified to testify on the particular subject
matter as required by sections 74.401(a) and 74.403(a) of the civil practice
and remedies code.  See Tex. Civ.
Prac. & Rem. Code Ann. ''
74.401(a), 74.403(a) (Vernon 2005).

In the trial court, Dr. Mercer objected to the
fact that Dr. Wagner is an anesthesiologist as opposed to a general surgeonCas is
Dr. MercerCand simply stated that because
Dr. Wagner is an anesthesiologist whereas Dr. Mercer is a board certified
general surgeon and the case involved a surgical procedure, the Barbers failed
to establish Dr. Wagner=s qualifications with regard to
the care provided by Dr. Mercer.  Merely
referencing paragraphs in Dr. Wagner=s
amended report however, without providing some analysis as to why they are
insufficient, is not enough.  See
Tex. R. App. P. 33.1(a)(1)(A) (requiring party to object with sufficient
specificity to make trial court aware of particular complaint); Maris v.
Hendricks, 262 S.W.3d 379, 384B85 (Tex.
App.CFort Worth
2008, pet. denied) (holding that objections to adequacy of timely filed report
are subject to preservation rules); see also Gatica, 269 S.W.3d at 141
(reiterating that physician of another specialty may be competent to testify
about standard of care if he or she has knowledge of what is usually and
customarily done by a practitioner under similar circumstances).  Dr. Mercer did, however, continue with his
objections, which he also raises on appeal.








Dr. Mercer challenges Dr. Wagner=s CV,
which admittedly does not show that he is a general surgeon but a board
certified anesthesiologist, a fact already established.  Dr. Mercer instead complains that Dr. Wagner=s CV
fails to show how Dr. Wagner has gained any Aknowledge,
training, or experience that would qualify him to opine on the standard of care
of a general surgeon harvesting a vein.@  While it is true that Dr. Wagner=s CV
might not reveal such information when read in isolation, we are allowed, if
not instructed, to consider the four corners of the report along with the CV
when evaluating the expert=s
qualifications to opine on a particular subject.  Palacios, 46 S.W.3d at 878; Hansen
v. Starr, 123 S.W.3d 13, 20 (Tex. App.CDallas
2003, pet. denied).  Because we do not
view Dr. Wagner=s CV in isolation, this
objection alone is an insufficient basis for the trial court=s
determination on Dr. Wagner=s
qualifications.

While Dr. Mercer then acknowledges that Dr.
Wagner=s
amended report shows that he has Aadministered
and managed medical anesthesia care and treatment to over 10,000 patients
undergoing surgeries in a supine position, and . . . between 300 and 400
patients undergoing cardiac surgery,@ Dr.
Mercer contends this experience is insufficient because it Adoes not
establish how he could legitimately be qualified by training or experience to
opine as to the scope of Dr. Mercer=s duties
and responsibilities as a general surgeon harvesting a vein, or what Dr. Mercer
should have known as a general surgeon harvesting a vein.@  However, excerpts from Dr. Wagner=s
amended report show otherwise.  For
example, in paragraph six, Dr. Wagner states, AI am
familiar and experienced in . . . proper patient positioning to prevent
peripheral neuropathies in the upper . . . extremities of patients . . .
including cardiac surgical procedures.@  Dr. Wagner additionally says in paragraph
seven,

I have substantial personal knowledge and experience in the medical
diagnosis, care, and treatment of adult patients undergoing general
anesthesia for cardiac surgical procedures, and I am familiar with the
management of such procedures, including the positioning and padding of the
patient and the patient=s extremities in the prevention of perioperative
peripheral neuropathies under circumstances like or similar to Malcolm Barber[>s]. . . .  I am familiar with the management of
such procedures, including the positioning and padding of the
patient. . . .  My medical
management of adult patients undergoing general anesthesia for cardiac
surgical procedures, and familiarity with the management of such
procedures, including the positioning and padding of the patient . . . has
included approximately 300 to 400 patients.

 

And in paragraph eight, Dr. Wagner further states,








I also have substantial knowledge of the causal relationship between
an anesthesiologist=s [and] general
and traumatic surgeon=s . . . failures to meet the
reasonable, prudent and accepted standards of medical [and] health . . .
care and supervision in the diagnosis, care and treatment of patients
undergoing general anesthesia for cardiac surgical
procedures, . . . including the positioning and padding of the
patient and the patient=s extremities in the
prevention of perioperative peripheral neuropathies under circumstances like or
similar to Malcolm Barber[>s] as of 2004. . . .  Furthermore, I have substantial knowledge of
the effectiveness or potential effectiveness of such standards of medical
[and] health . . . care for . . . general and traumatic surgeons . . . in
the diagnosis, care, and treatment of patients undergoing general anesthesia
for cardiac surgical procedures in the positioning and padding of surgical
patients= extremities, and I am
familiar with the management of the positioning and padding of the
patient . . . . 

 

And, finally in paragraph nine, Dr. Wagner says,

I have substantial knowledge of reasonable, prudent, and accepted
standards of medical, health, nursing, and physician=s assistant care
applicable to anesthesiologists, [and] general and traumatic surgeons,
. . . for the care and positioning and padding of the patient and the patient=s extremities . . .
.  My knowledge of such standards of medical,
nursing and physician=s assistant care is based
upon my above-described education, training and experience, my familiarity with
the applicable medical literature, my familiarity with the applicable
standards of medical and health care . . . that were applicable to all general
and traumatic surgeons . . . .

 [Emphasis
added.]

There is a repeating theme to Dr. Wagner=s
qualifications; he continually ties his education and training not only to his
knowledge of anesthesia care during a cardiac procedure, but also to the
medical and health standards of care for general surgeons like Dr. Mercer, who
perform cardiac procedures that involve positioning and padding of a
patient.  He clearly identifies that he
has acquired training and experience in studying, learning, and observing the
appropriate standards for general surgeons with regard to their obligations for
the positioning and padding of their medical patients.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.401(a)(3).

In this case, it is also important to note that
the alleged medical negligence does not relate to a particular failure regarding
the cardiac or general surgeons=
performance of the actual operating techniques. 
Here, the alleged breach relates specifically to the padding and
positioning of the patient and his extremities during the procedure.  The padding and positioning of a patient
during surgery is common to surgeries generally, and Dr. Wagner quite clearly
and repeatedly makes clear that he has knowledge, training, and experience
regarding the medical and surgical management duties of the general surgeon
during surgical procedures.[4]

For all the foregoing reasons, we believe that
the trial court=s initial ruling denying Dr.
Mercer=s
objections to Dr. Wagner=s qualifications was
correct.  We therefore conclude that the
Barbers= expert,
Dr. Wagner, is qualified to render an opinion under section 74.401(a) and (c),
as well as section 74.403, as to a general surgeon=s duty
regarding the proper positioning and padding of a cardiac surgical
patient.  Tex. Civ. Prac. & Rem. Code
'' 74.401(a),
(c), 74.403(a).  We therefore also
determine that the trial court abused its discretion in sustaining Dr. Mercer=s
objections to the qualifications of the Barbers= expert
upon the filing of their amended report. 
We sustain the Barbers= sole
issue and reverse and remand this case to the trial court for further
proceedings.

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON
and MEIER, JJ.

CAYCE, C.J. concurs without opinion.

DELIVERED:  October 15, 2009 

 

 

 

 

 

                                                        Appendix
A











[1]The trial court dismissed
some of the named defendants due to the insufficiency of the report, but the
Barbers were given an opportunity to amend their report as to Dr. Mercer and
some of the other defendants.





[2]Although it was the same
expert supplying the amended report whom the trial court had previously
found qualified, this time the trial court ruled that the expert was not qualified
to render the report and limited its ruling to Dr. Wagner=s lack of qualifications
alone.





[3]We note some disparity
with this determination:  if the trial
court had originally determined that Dr. Wagner was both unqualified to opine
and that the report was inadequate, the Barbers likely would have modified
their explanations of their expert=s qualifications. 
Now, however, they have apparently used up their one-time extension, and
the trial court has totally changed its mind regarding their expert=s qualifications.  Thus, the Barbers have been denied an
opportunity to amend this aspect of their report even once.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(c).





[4]Although Dr. Mercer notes
allegations against him that go beyond the positioning and padding of the extremities
in a surgical procedure and requests that we affirm the dismissal as to those
allegations, it is quite clear that the Barbers= complaints regarding Dr.
Mercer in the appeal relate only to his failure to manage the positioning and
padding of a patient=s extremities as shown by
their concession in their reply brief.