NUMBER 13-10-611-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

MOSES E. WILCOX SR.,
M.D.,                                                Appellant,

 

v.

 

MARIA G. MONTALVO, ET
AL.,                                         Appellees.

                                                                                                                     
  

 

On appeal from the 130th
District Court 

of Matagorda County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices Garza,
Vela, and Perkes 

Memorandum Opinion by
Justice Vela

 

This is an interlocutory appeal from a
trial court order denying a motion to dismiss a healthcare liability claim
filed against appellant, Moses E. Wilcox Sr., M.D.  Dr. Wilcox asserts on
appeal that the trial court erred because:  (1) the expert who filed the
initial report was not qualified; (2) the opinions of the expert were
insufficient with respect to both the standard of care and causation; (3) new
claims raised by appellees were not supported by an expert report; and (4)
filing a report compliant with chapter 74 of the civil practice and remedies
code was not contingent upon Dr. Wilcox submitting to a deposition.  We reverse
and remand.

I.  Background

Appellees, Maria G. Montalvo, Maria
Colquitt, Maria Emilia Huerta, Maria Benigna Morales, Jose Pilar Garcia, Juan Francisco
Garcia, Carlos Garcia Sr., Arnulfo Garcia, and Benito Garcia, as surviving
children of Maria Luisa Garcia, Deceased, and as representatives of the estate
of Maria Luisa Garcia (collectively “the Montalvos”), filed suit against Dr. Wilcox,
alleging that Dr. Wilcox’s negligence caused the wrongful death of Maria Luisa
Garcia.  Dr. Wilcox is a urologist.  The claims against Dr. Wilcox, brought as
health care liability claims, were that Garcia was dropped to the floor during
an appointment at Dr. Wilcox’s office.  The Montalvos also claimed that “the
Defendant’s failure to properly care for Mrs. Garcia and allowing her to fall
from the examining table was substandard medical care and represents medical
negligence that proximately caused her premature death.”  The Montalvos further
asserted that Garcia’s hip was fractured due to the fall, she developed an
embolus while undergoing surgery to repair the hip, and later died.  The
Montalvos amended their petition to allege negligent supervision and training,
and claimed that Dr. Wilcox maintained unsafe premises.  Specifically, they
alleged:  “the Defendant allowed a hazardous condition to exist in his
examining room, specifically wires and cords stretched out across the floor
which required Defendant’s employee to negotiate while transporting your
Decedent, an amputee.”  They also claimed that Dr. Wilcox was liable pursuant
to the doctrine of res ipsa loquitur.  

In support of their claim of
malpractice, the Montalvos submitted the affidavit of Karlen Downing, M.D., who
stated that she had “specific experience in supervising the transfer of
disabled patients” and that she was aware of the standard of care.  Her
curriculum vitae states that, at the time she wrote her report, she was the
medical director of East Texas Medical Center in Fairfield, Texas and was on
the part-time staff of the emergency room at Lakeside Hospital in Bastrop,
Texas.   

With respect to the standard of care and
Dr. Wilcox’s alleged breach of the standard of care, Dr. Downing opined:

The
standard of care in transferring patients from wheelchair to bed or vice versa,
is to take proper precautions to make certain that the patient does not drop to
the floor.  This is especially true when an elderly amputee is being
transferred.  No documentation in either Dr. Wilcox’s records or the hospital
records gives an appropriate explanation for why the patient was dropped. 
Therefore it appears that dropping her to the floor was a failure to exercise
proper safety precautions.

 

Dr. Downing expressed the following
opinion with respect to causation:

The
records indicate that Ms. Garcia suffered a fracture of the femur on her
amputated leg which was a direct consequence of the fall on May 14, 2008.  It
is certainly forseeable that a fracture of that nature would require surgery
and that emboli are a known complication of such surgeries.  Therefore it
follows that the fall ultimately was a contributing factor in Ms. Garcia’s
untimely death. 

 

She further concluded:

 

For
all of the above stated reasons it is my medical opinion, based on
documentation provided, that the standard of care was not met [by] Dr. Wilcox
and/or his staff and in my medical opinion the above failures directly caused
her to suffer a fractured femur [and] contributed to the untimely demise of
Maria Garcia.

 

Dr. Wilcox timely objected to the
adequacy of the report and, thereafter, he filed a motion to dismiss and
amended motion to dismiss complaining about the report’s adequacy.  The amended
motion challenges Dr. Downing’s qualifications to opine regarding the standard
of care because, as an emergency room physician, she was not qualified to
discuss the standard of care applicable to a urologist’s office practice.  The
motion to dismiss also challenges Dr. Downing’s affidavit because it fails to
set forth the standard of care, breach of the standard of care, and fails to
adequately establish a causal connection between the alleged negligence and the
complained of injury.  The trial court denied the motion to dismiss.  

II. Standard of Review

We review a trial court's order denying
a motion to dismiss for failure to comply with the expert report requirement
under an abuse of discretion standard.  NCED Mental Health, Inc. v. Kidd,
214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.) (applying abuse of
discretion standard to trial court's denial of motion to dismiss); Kendrick
v. Garcia, 171 S.W.3d 698, 702 (Tex. App.–Eastland 2005, pet.
denied) (same); see Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of discretion standard to trial
court's granting of motion to dismiss).  A trial court abuses its discretion
when it renders an arbitrary and unreasonable decision, lacking support in the
facts or circumstances of the case.  Samlowski v. Wooten, No. 08-0667,
2011 WL 711091 at,    *4 (Tex. Feb. 25, 2011); Goode v. Shoukfeh, 943
S.W.2d 441, 446 (Tex. 1997).  Likewise, a trial court abuses its discretion
when it acts arbitrarily or unreasonably, without reference to guiding rules or
principles.  Wooten, 2011 WL 711091 at *4; Mercedes-Benz
Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996) (citing Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex. 1985). 

III. Analysis and applicable law

A claimant
is required to serve each defendant health care provider with an expert report
within 120 days of filing suit.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon 2011).  The report
must provide a fair summary of the expert’s opinions concerning the applicable
standard of care, the manner in which the care rendered failed to meet the
standard, and the causal relationship between the failure and the injury, harm,
and damages claimed.  Id. § 74.351(r)(6).  An expert report must be
rendered by one qualified to testify as an expert on the particular subject
matter in issue.  Id. § 74.351(r)(5).  Expert reports cannot be based on
mere conclusions or speculation.  Bowie Mem’l Hosp. v. Wright, 79 S.W.3d
48, 52 (Tex. 2002).  The report must inform the defendant of the specific
conduct that the plaintiff has called into question and must provide a basis to
show that the claims have merit.  Palacios, 46 S.W.3d at 879.  

A.  Qualifications

Dr. Wilcox first argues that Dr. Downing
was not qualified to author the report because she was not qualified to opine
with respect to handling patients within the setting of a urologist’s office.  

An expert report concerning standards of
care for physicians “authored by a person who is not qualified to testify . . .
cannot constitute an adequate report.”  In re Windisch, 138
S.W.3d 507, 511 (Tex. App.–Amarillo 2004, orig. proceeding); see Ehrlich v.
Miles, 144 S.W.3d 620, 624-25 (Tex. App.–Fort Worth 2004, pet. denied).  To
be an “expert,”  the physician must be:

(1)
practicing medicine at the time such testimony is given or was practicing
medicine at the time the claim arose;

 

(2)
knowledgeable about the accepted standards of medical care for the diagnosis,
care, or treatment of the illness, injury, or condition involved in the claim;
and

 

(3)
qualified on the basis of training or experience to offer an expert opinion
regarding those accepted standards of medical care.

 

See Tex. Civ.
Prac. & Rem. Code Ann. §§ 74.351(r)(5)(A), 74.401(a).  Courts
consider whether the physician who completed the report (1) is board certified
or has other substantial training or experience in an area of medical practice
relevant to the claim, and (2) is actively practicing medicine in rendering
medical care services relevant to the claim.  Id. § 74.401(c).  The
offered report must generally demonstrate that the expert has knowledge, skill,
experience, training, or education regarding the specific issue before the court
which would qualify the expert to give an opinion on that particular subject.  Roberts
v. Williamson, 111 S.W.3d 113, 121 (Tex. 2003).  There are certain
standards of medical care that apply to multiple schools of practice and to any
medical doctor.  See Blan v. Ali, 7 S.W.3d 741, 746 (Tex. App.–Houston
[14th Dist.] 1999, no pet.).  Therefore, a physician “who is not of the same
school of medicine [as the defendant] is competent to testify if he has
practical knowledge of what is usually and customarily done by a practitioner
under circumstances similar to those confronting the defendant.”  Ehrlich v.
Miles, 144 S.W.3d at 625; see also Marling v. Maillard, 826
S.W.2d 735, 740 (Tex. App.–Houston [14th Dist.] 1992, no writ).

 

            Here, Dr. Downing’s curriculum vitae showed
that she was practicing medicine at the time she authored the report. 
Therefore, she sufficiently established that she met the first prong that she
was practicing medicine at the relevant time.  See id. § 74.401(a)(1).

Next, her report must establish that she
has knowledge of accepted standards of medical care for the diagnosis, care or
treatment of Garcia’s injury.  See id. § 74.401(a)(2).  She averred that
she had specific experience in supervising the transfer of disabled patients. 
Her curriculum vitae shows board certification in emergency medicine, and she
stated that she practices emergency medicine and that she has more than
thirty-four years in family practice, general surgery, obstetrics and emergency
medicine.  Dr. Downing’s affidavit also stated that she has experience in
supervising the transfer of disabled patients. 

Under the circumstances presented here,
the report established that Dr. Downing was qualified to opine on the
supervision of the transfer of disabled patients.  Although Dr. Downing was not
a urologist, the act of transferring or supervising the transfer of a disabled
patient would not be unique to the practice of urology.  Her experience and
specific statement that she had experience in transferring disabled patients is
sufficient to show her basic qualification to opine on the specific issue of
patient transfer.   We overrule Dr. Wilcox’s first issue.

B. Standard of Care and Breach of the
Standard of Care

With respect to the standard of care and
its breach, Dr. Downing opined that the standard “is to take proper precautions
to make certain that the patient does not drop to the floor.  This is
especially true when an elderly amputee is being transferred.”  With respect to
breach, she opines:  “No documentation in either Dr. Wilcox’s records or the
hospital records gives an appropriate explanation for why the patient was
dropped.”  Dr. Downing also states that “it appears that dropping her to the
floor was a failure to exercise proper safety precautions.”

The expert’s opinion must include his or
her opinion with respect to the three main elements of the cause of action: 
“standard of care, breach and causation.”  Jelinek v. Casas, 328 S.W.3d
526, 539 (Tex. 2010).  An expert report cannot merely state the expert's conclusions
about the elements of the cause of action; the expert must explain the basis of
his statements to link his or her conclusions to the facts.  “A report that
merely states the expert's conclusions about the standard of care, breach, and
causation” does not fulfill the two purposes of a good-faith effort.  Palacios,
46 S.W.3d at 879.

Basically, Dr. Downing’s opinion is that
proper precautions must be taken and apparently such precautions were not taken
because there is no record of explanation.  In other words, Dr. Wilcox must be
negligent because his records do not explain what happened.  But, her report
did not articulate what specific negligent conduct has been called into
question.  And she does not state what Dr. Wilcox and his staff did or failed
to do and what a reasonable and prudent physician would have done in the same
or similar circumstances. 

An expert must provide statements
concerning the standard of care to identify the care expected that was not
given with such specificity that inferences are not needed to discern them.  Palacios,
46 S.W.3d at 880.  The report must provide a basis for the trial court to
conclude that the claims have merit.  Id. at 879.  Dr. Downing’s
affidavit was simply conclusory with respect to both the standard of care and
its breach. She did not specifically describe the standard of care for
transferring a disabled patient or what Dr. Wilcox did or failed to do that breached
the standard.  Identifying the standard of care is vital because “[w]hether a
defendant breached his or her duty to a patient cannot be determined absent
specific information about what the defendant should have done differently.”  Id.
at 880.  Here, the report does not mention what precautions should be taken to
properly transfer a patient or in what manner Dr. Wilcox acted or failed to act
in accordance with those precautions. 

The Montalvos argue that Dr. Wilcox
could not have been more specific in her affidavit because Dr. Wilcox refused
to respond to discovery and refused to appear for deposition prior to Dr.
Downing’s report being filed.  The record does not reflect that Dr. Wilcox
refused to respond to proper discovery requests.  Regardless, this argument is also
meritless in view of the statute’s near moratorium on discovery until an expert
report and curriculum vitae are served.  Certain discovery is allowed, such as
information, including medical or hospital records or other documents or tangible
things through written discovery and deposition on written questions.  Id.
§ 74.351(s).  Subsection (u) of the statute limits the claimant to not more
than two depositions before the expert report is filed.  Id. §
74.351(u).  Decisions construing the statute have strictly applied the
statutory prohibition against discovery in general.  See In re Jordan,
249 S.W.3d 416, 418 (Tex. 2008) (orig. proceeding); In re Huag, 175
S.W.3d 449, 456 (Tex. App.–Houston [1st Dist.] 2005, orig. proceeding); see
also In re Knapp Med. Ctr. Hosp., No. 13-09-00382, 2009 WL 2398003, at *3
(Tex. App.–Corpus Christi July 1, 2009, orig. proceeding) (mem. op.) (stating
that the statute does not allow an oral deposition of a party prior to the
service of an expert report).  Thus, the Montalvos may not rely upon the
inability to depose Dr. Wilcox prior to filing an expert report as a reason for
producing a deficient report.  Because Dr. Downing’s report was deficient with
respect to both the standard of care and its breach, we sustain Dr. Wilcox’s
second issue.

C. Causation

Dr. Downing’s affidavit was equally
conclusory with respect to causation.  She opined that Garcia suffered a
fracture of the femur on her amputated leg which was a direct consequence of
the fall on May 14, 2008.  She indicated that it was forseeable that a fracture
of that nature would require surgery and that emboli are a known complication
of such surgeries.  She concluded that the fall ultimately was a contributing
factor in Ms. Garcia’s untimely death. 

In order for a report to be sufficient
on causation, it must link the health care provider's acts with an injury.  See
Jernigan v. Langley, 195 S.W.3d 91, 94 (Tex. 2006).  In Bowie v. Wright,
the plaintiff argued that a single statement was sufficient to establish
causation:  “if the x-rays would have been correctly read and the appropriate
medical personnel acted upon those findings then Wright would have had the
possibility of a better outcome.”  Bowie Mem'l Hosp., 79 S.W.3d at 52-53. 
The supreme court disagreed, holding that the report was insufficient because
it did not explain how the hospital's conduct caused the plaintiff's injury.  Id.
at 53.  The court, in Bowie, ultimately concluded that there was no
testimony linking the expert's conclusion to the hospital's breach.  Id.
at 53.

While Dr. Downing opines that the fall
was a contributing factor to the death, she does not opine that the negligence,
if any, of Dr. Wilcox caused the fall.  In fact, she attempts to utilize the
lack of information as indicia of negligence.  The Montalvos’ theory was that
the fall happened because of negligence, which necessitated the surgery, which
ultimately caused the death.  Dr. Downing was required under the case law to
flesh out what Dr. Wilcox did wrong and how the purported failure to properly
transfer the patient proximately caused Garcia’s injuries and death.  Dr.
Downing’s report did not link any alleged departure from the standard of care
to the facts.  See Gray v. CHCA Bayshore, L.P., 189 S.W.d 855,
859 (Tex. App.–Houston [1st Dist.] 2006, no pet.).  Here, the report was
conclusory because it did not provide information linking a negligent act to
the death.  See Lopez v. Montemayor, 131 S.W.3d 54, 60 (Tex. App.–San
Antonio 2004, pet denied).  We sustain Dr. Wilcox’s third issue. 

D. Amended Claims      

By his fourth issue, Dr. Wilcox argues
that the amended claims raised by the Montalvos are health care liability
claims for which there is no report.  The nature of the safety related claims
the Legislature intended to be included under the Medical Liability and Insurance
Improvement Act (“MLIIA”) are matters of statutory construction, reviewable de
novo.  Marks v. St. Luke's Episcopal Hosp., 319 S.W.3d 658, 663
(Tex. 2010).  The amended claims urged here are that there was a hazardous
condition in Dr. Wilcox’s examining room, specifically wires and cords, which
required Dr. Wilcox’s employees to negotiate around them while transporting
Garcia.  

 

To determine whether a cause of action
is a health care liability claim, we examine the underlying nature of the
claim.  Marks, 319 S.W.2d at 664 (citing Garland Cmty. Hosp.
v. Rose, 156 S.W.3d 541, 543 (Tex. 2004).  We look to the essence of the
claim and consider the alleged wrongful conduct and the duties allegedly
breached.  See Diversicare Gen. Partner, Inc. v. Rubio, 185
S.W.3d 842, 851 (Tex. 2005).  When the essence of the suit is a health care
liability claim, a party cannot avoid the requirements of the statute through
artful pleading.  Garland Cmty. Hosp., 156 S.W.3d at 543; see Yamada
v. Friend, No. 08-0262, 2010 WL 5135334, at **2, 4, 5 (Tex. Dec. 17, 2010)
(unchallenged holding that claims encompassing physician's safety advice to
water park were health care liability claims required dismissal of all claims
arising from same facts on theory of improper claim-splitting).  “Whether the
underlying claim involves a health care provider’s negligent act or omission,
or the patient’s exposure to some other safety risk, the relationship between
the injury causing event and the patient’s care or treatment must be
substantial and direct for the cause of action to be a health care liability
claim under the MLIIA.”  Marks, 319 S.W.3d at 664.

 The Montalvos’ claim is that Garcia was
improperly transferred while in the care of Dr. Wilcox and his employees. The
gravamen of their claim is a health care liability claim because it clearly involved
the safety and care rendered to Garcia while in the care of Dr. Wilcox.  The
substance of the Montalvos’ claim is that Dr. Wilcox failed to provide a safe
method or environment for transferring a disabled patient.  All of the
Montalvos’ claims are based on the same underlying facts.  Permitting the same
underlying facts to give rise to both a health care liability claim and an
ordinary negligence claim as the Montalvos attempted to plead in their amended
pleading, would negate the procedures and limitations of the MLIIA.  Turtle
Healthcare Group, L.L.C., v. Linan, No. 09-0613, 2011 WL
711102, at *3 (Tex. Feb. 25, 2011) (per curiam).

The amended claims were merely shades
and phases of the earlier pleaded health care liability claims, so we do not
believe there was “no report” as to these claims.  Even though Dr. Downing’s
report did not specifically address the amended claims, they were not
substantively different from the earlier pleaded complaints that she did
attempt to address, though deficiently.  We overrule Dr. Wilcox’s fourth issue.

IV. Conclusion

Because we find Dr. Downing’s report
deficient with respect to the standard of care, its breach, and causation, we
reverse the trial court’s denial of the motion to dismiss and remand to the
trial court for it to decide whether to grant the Montalvos a thirty-day
extension.  Leland v. Brandal, 257 S.W.3d 204, 207 (Tex. 2008); see Wooten,
2011 WL 711091 at *4.  Section 74.351’s plain language permits one thirty-day
extension when a court of appeals finds deficient a report that the trial court
considered adequate.  Brandal, 257 S.W.3d at 207.  In light of
our ruling, we decline to address Dr. Wilcox’s fifth issue regarding his
request for attorney’s fees.

 

 

                                                                        ROSE
VELA

                                                                                    Justice

 

Dissenting Memorandum
Opinion 

by Justice Dori
Contreras Garza

 

Delivered and filed
the 

14th day of April,
2011.